**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 6:24-CV-00423-ADA-DNM** |
| | § | |
| **PEOPLETRAIL, LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**TO:    THE HONORABLE ALAN D. ALBRIGHT,**
**UNITED STATES DISTRICT JUDGE,**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636, FED. R. CIV. P.  72, and Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Peopletrail, LLC's Motion for Summary Judgment (Dkt. No. 29) and John Doe's Motion for Partial Summary Judgment (Dkt. No. 40). For the reasons that follow, the Court **RECOMMENDS** that Peopletrail, LLC's Motion for Summary Judgment be **GRANTED** and John Doe's Motion for Partial Summary Judgment be **DENIED**.

**BACKGROUND FACTS**

The material facts of this case are largely undisputed. Peopletrail is a consumer reporting agency that compiles and maintains nationwide consumer files. Dkt. No. 1 at 1; Dkt. No. 29 at 13. According to Bryan Jensen, Peopletrail's Chief Operating Officer, Peopletrail uses a data aggregator, Data Divers, to collect most of its data and uses the data to compile reports for

various entities. *Id*., Ex. 1 at 64. Peopletrail uses the information it obtains from Data Divers to conduct criminal background checks. *Id*.

To officiate a varsity-level athletic contest in Texas, an individual must first register with the University Interscholastic League. *Id*., Ex. 1 at 5. The Texas Association of Sports Officials ("TASO") is an organization of high school and middle school sports officials that, under an agreement with the University Interscholastic League, authorizes, trains, recruits, and assigns officials for games. *Id*. at 4. Individuals who join TASO become members and pay dues. *Id*. at 5. Since 2015, Peopletrail has conducted all background checks for TASO as part of the process prospective TASO members must complete. *Id.* at 8. After submitting an application, paying the application fee, and undergoing a background check, an applicant's membership is approved. However, if the background check is flagged, a membership review committee convenes to evaluate the application. *Id*. at 11. The membership committee is comprised of volunteers who review each prospective member's application. The TASO membership committee uses the Peopletrail background checks as one part of the committee review process prior to approving new TASO members. *Id*., Ex. 1 at 11. Once admitted, members must then complete training and pass required examinations to begin officiating games. *Id*. at 7.

Doe applied for TASO membership on October 19, 2023 so he could join TASO, participate in TASO training and education programs, and officiate games. Dkt. No. 40 at 8. In keeping with its standard practice, TASO requested Doe's criminal background check from Peopletrail. *Id*. Doe alleges that Peopletrail reported a criminal charge to TASO as "pending" even though it had been dismissed in September of 2023, rendering the report "grossly inaccurate and stigmatizing." Dkt. No. 1 at 8. According to Doe, he informed TASO that the charge had been dismissed but received no response. *Id.* at 9. He subsequently obtained an

expungement of the charge in January of 2024. *Id*. at 10.

In 2024, following the expungement, Doe reapplied to TASO, which again used Peopletrail to conduct a background check. *Id*. Doe alleges that Peopletrail once more reported the charge as pending, despite its dismissal and subsequent expungement, and improperly included it in a consumer report prepared for employment purposes since TASO membership is a prerequisite for being hired to officiate athletic events. *Id.* at 11. Peopletrail asserts that the inclusion of the dismissed and expunged charge had nothing to do with Doe's failure to secure TASO membership and that the actual reason Doe did not become a TASO member after submitting his second application is because Doe withdrew his membership application, which Doe concedes he did. Dkt. No. 40 at 4; Dkt. No. 29 at 9.

In June of 2024, Doe filed a complaint against Peopletrail with the Better Business Bureau because of Peopletrail's alleged failure to accurately report Doe's criminal history to TASO. Peopletrail responded by stating it would reinvestigate its reporting of Doe's criminal history. It later acknowledged the inaccuracy, corrected the report, and provided TASO with an updated background check. Dkt. No. 29 at 14-15. Peopletrail concedes that it "prepared a background check to a membership position with TASO, which contained an inaccurate entry." Dkt. No. 27 at 2. Doe now claims that he is unable to earn income as a sports official because TASO did not grant him membership due to Peopletrail's error, and schools will not hire him to officiate games since he is not a TASO member. Dkt. No. 1 at 12.

<u>**APPLICABLE LEGAL STANDARD**</u>

The Fair Credit Reporting Act ("FCRA") was enacted, in part, to ensure that consumer reporting agencies exercise their responsibilities with "fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C.S. § 1681(a)(4). To state a claim under the FCRA, a

plaintiff must allege facts supporting an inference that an inaccuracy resulted from the defendant's failure to follow reasonable procedures. *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 896 (5th Cir. 1998). Moreover, the inaccuracy in a report covered by the FCRA must have "resulted from negligent or willful failure to use reasonable procedures when the report originally was prepared, not upon reinvestigation." *Waggoner v. Trans Union, LLC*, No. 3:02-CV-1494-G, 2003 U.S. Dist. LEXIS 21911, at *16 (N.D. Tex. July 17, 2003) (citing *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir.1998)).

The FCRA defines a consumer credit report as:

> …any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
> **(A)** credit or insurance to be used primarily for personal, family, or household purposes;
> **(B)** employment purposes; or
> **(C)** any other purpose authorized under section 604 [15 USCS § 1681b].

15 U.S.C.S. § 1681a(d). "Employment purposes" means, when used in connection with a consumer report, "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C.S. § 1681a(h). The statute defines a "consumer reporting agency" as any person who, for fees or on a cooperative nonprofit basis, regularly assembles or evaluates consumer credit or other information for the purpose of furnishing consumer reports to third parties using any means or facility of interstate commerce. 15 USCS § 1681a(f). The purpose for which the information was gathered determines whether a

given report is a consumer report under the FCRA. *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 885 (5th Cir. 1989).

The FCRA requires that consumer reporting agencies "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer." 15 U.S.C.S. § 1681(b). Under the statute, a consumer reporting agency shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. This Section does not impose strict liability for inaccuracies, "but only a duty of reasonable care in preparation of the report." *Thompson v. San Antonio Retail Merchs. Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982). The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a "reasonably prudent person would do under the circumstances." *Id.* at 513 (citing *Bryant v. TRW, Inc.*, 487 F. Supp. 1234, 1242 (E.D. Mich. 1980)). Typically, "reasonableness is a question for the jury." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir. 2001) (citation omitted). However, "reasonableness becomes a question of law if the facts are undisputed." *Cont'l Sav. Ass'n v. U.S. Fidelity*, 762 F.2d 1239, 1243 (5th Cir. 1985).

To recover for violations of § 1681e(b), a plaintiff must demonstrate that "an inaccuracy in [his] credit report resulted from [the agency's] negligent or willful failure to use reasonable procedures when the report originally was prepared, not upon reinvestigation." *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 798 (N.D. Tex. 2013) (citation omitted); *See also Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986). Under § 1681e(b), a plaintiff must establish four elements: (1) inaccurate information was included in his credit report; (2) the inaccuracy was due to the consumer credit reporter's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the plaintiff suffered injury; and (4) the plaintiff's injury

was caused by the inclusion of the inaccurate entry. *Gray v. Experian Info. Sols., Inc.*, No. 1:23-CV-545-RP, 2024 WL 4945023, at \*2 (W.D. Tex. Sept. 16, 2024). Section 1681i(a) of the FCRA provides that if a consumer disputes the completeness or accuracy of any item in his file, a credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C.S. § 1681i(a)(1)(A); *Ostiguy v. Equifax Info. Servs., LLC*, No. 16-CV-790-DAE, 2017 U.S. Dist. LEXIS 74746, 2017 WL 1842947, at \*3 (W.D. Tex. May 4, 2017). Further, "[i]n a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993).

Section 1681n(a) creates a private right of action for willful noncompliance with the FCRA, while section 1681o(a) provides a private right of action for negligent noncompliance. *See Gray v. Experian Info. Sols., Inc.*, No. 1:23-CV-545-RP, 2024 U.S. Dist. LEXIS 218844, at \*4 (W.D. Tex. Sep. 16, 2024). Under § 1681n(a), "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for statutory and potentially punitive damages. Furthermore, "[o]nly defendants who engaged in 'willful misrepresentations or concealments' have committed a willful violation and are subject to punitive damages under § 1681n." *Stevenson v. TRW Inc.*, 987 F.2d 288, 293, 294 (5th Cir. 1993) (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1264 (5th Cir.1986)). To be considered willful, misrepresentations must be the result of either a "knowing" or "reckless" violation of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). To commit a knowing violation, "a defendant must have knowingly and intentionally committed an act in conscious disregard for the rights of others." *Stevenson*, 987

F.2d at 293 (citation omitted). Recklessness is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (citation omitted). Similarly, under § 1681o, a consumer reporting agency's "negligent failure to utilize reasonable procedures subjects the agency to actual damages resulting from its failure, court costs, and reasonable attorney's fees." 15 U.S.C.S. § 1681o; *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 798 (N.D. Tex. 2014).

## ANALYSIS

Peopletrail moves for summary judgment, and Doe moves for partial summary judgment. Dkt. Nos. 29, 40. For the reasons that follow, the Court **RECOMMENDS** that Peopletrail's Motion for Summary Judgment be **GRANTED** and Doe's Motion for Partial Summary Judgment be **DENIED**.

### A. Application of the FCRA

Peopletrail contends that the background check documents at issue are not governed by the FCRA because Doe applied for a membership, not employment, with TASO. Dkt. No. 29 at 11. It further argues that, even if the membership is viewed as a gateway to future work, that work would be performed as an independent contractor and therefore falls outside the scope of the FCRA. *Id*. Doe responds that the report Peopletrail prepared is a consumer report for "employment purposes" and thus subject to the FCRA's requirements. Dkt. No. 44 at 10.

On its face, the FCRA's text encompasses all reports prepared for "employment purposes," which includes TASO membership where that membership is a prerequisite to working as a football official in Texas. Courts have explained that the definition of "consumer report" is effectively limited to information "used or expected to be used or collected in

connection with a business transaction involving one of the consumer purposes set out in the statute," namely eligibility for personal credit or insurance, employment purposes, or licensing. *Cavaliere v. Burke*, No. 94-20275, 1995 U.S. App. LEXIS 43258, at *6 (5th Cir. Mar. 13, 1995); *See also St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989); *Haberman v. PNC Mortg. Co.*, No. 4:11cv126, 2012 U.S. Dist. LEXIS 191086, at *20 (E.D. Tex. Sep. 7, 2012).

Although TASO is a membership organization, its admission decisions are clearly tied to employment opportunities. Much like a licensing body, TASO functions as a gatekeeper to work in the field. Doe's potential status as an independent contractor does not change the fact that TASO membership is a necessary condition to obtain that work. While the distinction may be close, the summary judgment standard requires that the Court construe the facts in "the light most favorable to the nonmovant," and the FCRA must be liberally construed in favor of the consumer. *Baker v. Coborn*, 170 F.4th 988 (5th Cir. 2026); *Wagner v. TRW, Inc.*, No. 97-30601, 1998 U.S. App. LEXIS 38893, at *3 (5th Cir. Mar. 4, 1998). Accordingly, the Court concludes that the report Peopletrail prepared in connection with Doe's TASO membership application was furnished for employment purposes under the FCRA.

## B.  Reasonable Measures and Reckless, Willful, or Negligent Conduct

The parties do not dispute that the background check Peopletrail furnished to TASO contained an error. Dkt. No. 29 at 11. Peopletrail maintains that it reasonably relied on its data vendor, Data Divers, whose low dispute rate demonstrates the reliability of its information. *Id*. at 27. Doe argues that Peopletrail's failure to follow reasonable procedures was willful or reckless, or, in the alternative, negligent regardless of Data Divers's purported accuracy. Dkt. No. 40 at 12-13.

In *Siantou v. Experian Info. Sols., Inc.*, the Court found that the Plaintiff had not met his burden of proof because he did not present summary judgment evidence showing that one of the alleged reports was inaccurate, nor did he provide evidence showing that the reporting agency acted without reasonable care. *Siantou v. Experian Info. Sols., Inc.*, No. A-24-CV-1130-RP, 2025 U.S. Dist. LEXIS 259777, at *12-15 (W.D. Tex. Dec. 15, 2025). The court further reasoned that the agency acted reasonably because it investigated and corrected the inaccuracy within thirty days of being notified. *Id*. It also explained that relying on a third-party source reasonably expected to provide accurate information, such as a credit furnisher, without more, does not establish a negligent or willful failure to follow reasonable procedures. *Id*.

Here, the parties agree that an inaccuracy existed. Dkt. No. 29 at 11. Therefore, the first element of § 1681e(b) test is satisfied. Nevertheless, Doe's FCRA claim cannot survive summary judgment because he fails to establish that Peopletrail acted willfully or negligently, the second element of a § 1681e(b) claim. Moreover, it is undisputed that Peopletrail corrected the inaccuracy promptly after becoming aware of it as required under § 1681i(a)(1).

Despite Doe's assertions, Peopletrail does not admit that its procedures were unreasonable. Dkt. No. 40 at 20. The FCRA imposes no strict liability for inaccuracies; it requires only reasonable care in preparing a report. *Thompson v. San Antonio Retail Merchs. Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982). Thus, Doe bears the burden of showing that the inaccuracy resulted from a negligent or willful failure to follow reasonable procedures. *See Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 896 (5th Cir. 1998). The standard of conduct by which the trier of fact must judge the adequacy of the credit reporting agency's procedures is what a reasonably prudent person would do under the circumstances. *Thompson v. San Antonio Retail Merchs. Asso.*, 682 F.2d 509, 513 (5th Cir. 1982).

Doe offers no evidence beyond bare assertions that Peopletrail failed to exercise reasonable care, and the testimony he cites does not support those assertions. Dkt. No. 40 at 20. By contrast, Peopletrail has presented testimony that its data aggregator, Data Divers, is a reliable source of information. Dkt. No. 29 at 27. Its COO, Bryan Jensen, testified regarding Data Divers's accuracy, the low rate of disputes, the length of the parties' relationship, and the company's internal accuracy checks. *Id.*, Ex. 1 at 66-68. As in *Siantou*, the third-party source on which Peopletrail relies is known to be reliable, and given the lengthy history between the two companies, there was no reason for Peopletrail to doubt the accuracy of the information it received. Moreover, Doe concedes that once Peopletrail became aware of the inaccuracy, it reinvestigated and furnished a corrected report to TASO. Dkt. No. 32, Ex. 10 at 69-70. Because Doe has not established that the inaccuracy resulted from Peopletrail's failure to follow reasonable procedures, he cannot satisfy the second element of a claim under § 1681e(b). For the same reason, his claims under §§ 1681n(a) and 1681o(a), which depend on a violation of § 1681e(b), also fail.

### C. Evidence of Damages

Peopletrail argues that Doe has failed to provide admissible evidence of damages, or any evidence to put a reasonable dollar figure to his losses, if any. Because there has been no violation of the FCRA, the Court declines to reach the issue of damages.

### D. Recommendation

For the above-stated reasons, the Court **RECOMMENDS** that Peopletrail's Motion for Summary Judgment be **GRANTED** and Doe's Motion for Partial Summary Judgment be **DENIED**.

## OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(l)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).

**SIGNED** this 1st day of May, 2026.

DAN N. MACLEMORE
UNITED STATES MAGISTRATE JUDGE